IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK09-42120-TLS |
| | ) | |
| LARRY L. BARLOW and | ) | CH. 7 |
| LYNNE E. BARLOW, | ) | |
| | ) | |
| Debtors. | ) | |

## ORDER

Hearing was held in Lincoln, Nebraska, on April 28, 2010, on a final application for fees and expenses filed by William L. Needler and Associates, Ltd., attorneys for Debtors (Fil. #274), objections filed by Security National Bank (Fil. #278) and the United States Trustee (Fil. #279), and a response filed by Mr. Needler (Fil. #286). William L. Needler appeared pro so and on behalf of William L. Needler & Associates, Ltd., Richard P. Garden appeared for Security National Bank, and Jerry J. Jensen appeared on behalf of the United States Trustee.

William L. Needler filed his first and final fee application as Chapter 11 counsel to Debtors on March 5, 2010, seeking attorney fees of $86,151.50, together with expenses of $3,494.62. Objections to Mr. Needler's fee application were filed by Security National Bank and the United States Trustee. For the reasons discussed below, I find that Mr. Needler's fee application should be approved in the reduced amount of $45,924.50 for fees and $3,200.77 for expenses, for a total of $49,125.27.

### *BACKGROUND*

On July 24, 2009, Debtors filed this case as a voluntary Chapter 12 proceeding. Their attorney was, and continues to be, Richard L. Johnson. Debtors primarily conducted a dairy operation, though they planned to start up a cattle feeding operation post-petition. Security National Bank is a creditor secured by liens on all of Debtors' real estate, farming equipment, livestock, accounts receivable, crops, and feed-on-hand. Another secured creditor, Donald Kossmann, claims a first lien on some of the real estate. When the case was filed, the total indebtedness claimed as secured by Debtors' assets was approximately $3,800,000.00. The value of the assets was somewhere between $2,000,000.00 and $2,900,000.00.

On September 3, 2009, a motion to convert the case to Chapter 11 (Fil. # 39) was filed by Debtors. On that same date, Mr. Needler entered his appearance (Fil. #42) in the case as Chapter 11 counsel. On September 4, 2009, Mr. Needler filed a disclosure of compensation (Fil. #45), which stated that he received $15,000.00 as a general retainer and that "[t]hese moneys paid were NOT from this estate, but a third party NOT a creditor." This Court granted the motion to convert to Chapter 11 on September 24, 2009 (Fil. #58).

Subsequently, the secured creditors each filed motions for relief from the automatic stay. The motions were granted following a final hearing conducted with live testimony on December 16 and

17, 2009. Following the order granting the secured creditors relief from the automatic stay to pursue their state court default remedies, Mr. Needler filed the following on behalf of Debtors:

–A motion for withdrawal of the reference by the United States District Court;
–An emergency motion to shorten time on the withdrawal motion;
–An objection to this Court's Report and Recommendations to the District Court;
–A motion to stay proceedings pending the withdrawal of the reference;
–A motion to stop seizure of assets;
–An emergency motion to shorten time on the motion to stay;
–A motion to reconsider the relief order;
–An adversary proceeding for purposes of removing a state court action to this Court;
–An appeal to the Bankruptcy Appellate Panel of the denial of the motion to stay;
–Various declarations and exhibits in support of the foregoing; and
–A motion to withdraw as attorney.

On January 15, 2010, Mr. Johnson filed on behalf of Debtors a motion to convert the case to Chapter 7. The next day, Mr. Needler filed his motion to withdraw as counsel. The conversion was granted and it appears that the only assets for the Chapter 7 trustee to administer are potential preference recoveries.

The objecting parties assert that Mr. Needler's compensation should be denied or reduced because his retainer came from a creditor and/or potential preference defendant and, therefore, he had a conflict of interest. Further, the objecting parties urge that the amount of fees requested is excessive and unreasonable, and that many of the services performed and the various filings made were not necessary to the administration of the case or beneficial to the case.

## *DISCUSSION*

The bankruptcy court has broad power and discretion to award or deny attorney fees and a duty to examine them for reasonableness. *Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 863 (8th Cir. 2000). The movant bears the burden of proving that he is entitled to compensation under 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016(a). *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 736 (B.A.P. 8th Cir. 1997). "Whether the compensation sought is reasonable, given the time, nature, extent of the services and the value of the services is always a question of fact for the court." *Id.* at 735 (quoting *In re Jelinek*, 153 B.R. 279, 284 (Bankr. D.N.D. 1993)).

When calculating an applicant's "reasonable fee" under 11 U.S.C. § 330, the bankruptcy court must start with the lodestar calculation.[1] *Id.* at 739. "[T]he lodestar method of fee calculation is the preferred method by which federal courts should determine reasonable attorney's fees under federal statutes which provide for such fees." *Id.* at 736. When making an award of professional fees,

---

[1] The lodestar amount is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 730-31 (8th Cir. 1992).

the court must either make an express lodestar calculation or make a finding that the lodestar method is inappropriate under the circumstances. *Id.*

In making the lodestar calculation, the court must make a finding as to whether the number of hours billed were reasonable in light of the complexity of the case, and then multiply that by a reasonable hourly rate for those services. *Id.* at 737. In determining what constitutes a reasonable and proper fee in a given case, judges may rely on their own knowledge of customary rates and experience. *Bachman v. Pelofsky (In re Peterson)*, 251 B.R. 359, 365 (B.A.P. 8th Cir. 2000). Adjustments to the lodestar amount may be made in rare and exceptional circumstances based on the quality of the representation or the results obtained. *Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 732 (8th Cir. 1992). For guidance in making this assessment, the court may consider the factors[2] enumerated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), to the extent they are not already accounted for in the lodestar amount. *Kula*, 213 B.R. at 738.

The court need not analyze the time spent on any given task to determine whether it is excessive, but may consider generally whether the nature of the case was routine and whether the fees requested are in line with those typically charged. *Bachman v. Laughlin (In re McKeeman)*, 236 B.R. 667, 672 (B.A.P. 8th Cir. 1999). Fees requested may be reduced on a number of grounds, including a finding that the debtor was billed for unnecessary or duplicative services, *In re AOV Indus., Inc.*, 797 F.2d 1004, 1008 (D.C. Cir. 1986), for tasks that could have been performed by assistants, *Garb v. Marshall (In re Narragansett Clothing Co.)*, 210 B.R. 493, 499 (B.A.P. 1st Cir. 1997), or for time not reasonably expended to benefit the bankruptcy estate. *Advanced Microbial Solutions, L.L.C. v. O'Neal (In re Advanced Microbial Solutions, L.L.C.)*, 306 B.R. 915, 920 (E.D. Tex. 2004). Vague fee applications that "camouflage" the amount of time spent on each task and hinder the court's scrutiny of the reasonableness of the time expended can lead to reduced fee awards. *In re Baker*, 374 B.R. 489, 495 (Bankr. E.D.N.Y. 2007). Fees awarded for time spent traveling in connection with the case may be reduced. *McKeeman*, 236 B.R. at 672.

Addressing first the conflict of interest issue, on September 4, 2009, Mr. Needler filed a statement of attorney fees (Fil. #45) which indicated that he received a $15,000.00 retainer from a third party who was not a creditor. The statement did not disclose the name of the third party who paid the retainer or the relationship of the third party to Debtors or Mr. Needler. On January 14, 2010, Mr. Needler filed an amended statement of attorney fees (Fil. #257) which indicated that he received an additional $10,000.00 from the same third party on December 12, 2009. As it turns out, according to the United States Trustee, the retainers were paid by Mr. and Mrs. Schneider, the sister

---

[2]The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

and brother-in-law of Debtor Lynne Barlow. Mrs. Schneider is a creditor of Debtors, as well as a potential preference defendant. According to the United States Trustee, since Mr. and Mrs. Schneider are potential preference defendants and creditors of the estate, Mr. Needler's receipt of payment for attorney fees from them creates a conflict of interest. Specifically, Mr. Needler cannot be paid by someone he may be required to sue.

In response to the objections, Mr. Needler filed a declaration (Fil. #284) which acknowledged that his prior investigation of the case indicated that Mrs. Schneider could very well be a preference target since she had made an unsecured pre-petition loan to Debtors which had been partially repaid pre-petition. However, Mr. Needler states that he was assured by Debtors and Mrs. Schneider that Mrs. Schneider's husband, Donald Schneider, had no previous dealings with Debtors' estate and was not a creditor. Mr. Needler asserts that the retainer amounts both came from Mr. Schneider and not from the funds of Mrs. Schneider. Unfortunately, Mr. Needler failed to put on any evidence from either Mr. or Mrs. Schneider to prove that point. All that can be determined from the evidence that was presented is that Mr. Needler believed the retainer funds came from the separate assets of Mr. Schneider.

To say the least, I find it troubling that Mr. Needler failed to provide additional disclosures with respect to the source of the compensation. Mr. Needler admits that he knew Mrs. Schneider was a relative of one of the Debtors, a creditor and potential preference defendant, and that the retainers had come from her husband. Rather than disclose those facts, Mr. Needler instead disclosed only the cryptic statement that the funds came from a third party who was not a creditor. Even more troubling is Mr. Needler's failure to present <u>any</u> evidence from Mr. and Mrs. Schneider in support of his position after the propriety of accepting retainers from them was placed into question. Having said that, I do not believe it is appropriate to completely deny Mr. Needler's compensation due to a conflict of interest since I still do not know the true source of the retainer funds. However, the "less than complete" disclosure will be a factor in this Court's evaluation of the merits of the fee application.

Addressing the merits of the fee application, Mr. Needler categorized his fees into 13 categories and the objectors have issues with at least seven of those categories, including:

| Category/Task | Charges |
|---|---:|
| "Adversary proceedings" | 4,849.50 |
| "Debtor's Plans and Disclosure Statements and Confirmation" | 6,572.00 |
| "Cash collateral motions and matters relating to use of cash collateral" | 12,746.50 |
| "Matters relating to Prepetition Litigation" | 1,404.50 |
| "Travel" | 2,703.00 |
| "Matters relating to post petition litigation" | 14,283.50 |
| "Matters relating to withdrawal of reference, appeals and requests for stay" | <u>28,593.50</u> |
| | 71,152.50 |

A review of the record reveals that a substantial amount of the time spent by Mr. Needler in the foregoing categories was unreasonable, unnecessary, and of little or no benefit to the estate. This case was not complex. This estate had two primary secured creditors and a handful of unsecured creditors. A creditors committee was not appointed. All of Debtors' assets were encumbered and, collectively, were worth substantially less than the debt secured thereby. Valuation was not a significant issue in the case since the values placed on the collateral by the secured lenders were actually greater than Debtors' scheduled values.

Mr. Needler filed many motions on an "emergency" basis even though in many cases the emergency was due to his failure to file the motions earlier or otherwise were not emergencies at all. Further, in response to this Court's order granting relief from the automatic stay to the secured creditors (Fil. #208), Mr. Needler did not appeal that order and seek a stay pending appeal, which is the typical path taken when a party disagrees with a trial court order. Instead, he filed a variety of other motions as detailed above. He appeared to be trying to indirectly seek a review of this Court's relief from stay order by the curious tactic of seeking a withdrawal of the reference by the District Court. Further, after obtaining relief from the stay, Security National Bank commenced a replevin action in state court and late in the afternoon on the Friday before the Monday replevin hearing, Mr. Needler filed an "adversary complaint" herein seeking to remove the state court replevin action to this Court. This was clearly done in an attempt to improperly stop the state court hearing despite the fact that relief from the automatic stay had already been granted to allow Security National Bank to proceed in state court. That act of removing the state court action after relief from the automatic stay had been granted to proceed bordered on being sanctionable.

The choices made by Mr. Needler and the time and labor expended in this case in light of the results obtained (Chapter 7 liquidation) are real areas of concern. As discussed above in the objections, one could argue that Mr. Needler's services were of no benefit to the estate at all considering that relief from the automatic stay was ultimately granted and the case has converted to Chapter 7. However, Mr. Needler was technically acting upon the instruction of Debtors, so a complete denial of compensation would not be justified.

In any event, the fact remains that Mr. Needler's services did prove to be of little or no benefit to the estate. Of particular concern to this Court is the fact that while Mr. Needler did file evidence in support of his many motions and/or in response to motions filed by the secured creditors, the evidence he provided was in many cases lacking in relevant detail, internally inconsistent, irrelevant, or otherwise insufficient. For example, the cash flow projections filed in support of motions to use cash collateral and in defense to the motions for relief from stay were amended on many occasions due to being inaccurate, incomplete, or simply because they failed to support Debtors' position. More disturbing is the failure to present evidence when necessary. As previously discussed, Mr. Needler failed to put on any evidence from Mr. and Mrs. Schneider to establish as a matter of fact the source of the retainers paid to Mr. Needler. Further, during the final hearing on the motions for relief that took place on December 16 and 17, 2009, Mr. Needler failed to present any evidence to counter the expert testimony evidence presented by the moving parties. In particular, Mr. Needler failed to present any evidence to support the cash flow and weight gain projections for the cattle feeding operation that Debtors commenced post-petition in an attempt to create a viable

Chapter 11 plan. The central issue with respect to viability of Debtors' operation involved Debtors' ability to feed cattle and cause those cattle to gain weight at a certain rate in order to be sold at a profit. At the time of the final relief hearing, Debtors failed to present any evidence as to the actual weight gain of the cattle that had been part of their post-petition operation.

Another matter of significant concern to this Court involved Mr. Needler's efforts to convince the United States District Court to withdraw the reference when the reality is that the only basis for withdrawal of the reference was that Debtors did not like this Court's ruling on the relief from stay motion. There is simply no precedent for a withdrawal of the reference in such a situation. Mr. Needler would have been better served to simply appeal the relief from stay order and seek a stay pending appeal from either the United States District Court or the Bankruptcy Appellate Panel.

None of the objecting parties has objected to Mr. Needler's hourly rate and, therefore, I find that his hourly rate is reasonable. However, as discussed above, I find that the total number of hours billed are not reasonable. I also find that Mr. Needler should have included additional information in his disclosure with respect to the source of the retainers. Therefore, a reduction in fees is warranted. Unfortunately, there does not appear to be a precise methodology for determining the appropriate reduction based on the record.

Mr. Needler's fee application requests $67,045.00 in fees for the categories regarding matters related to withdrawal of reference, appeals, and requests for stay; matters relating to post-petition litigation; cash collateral motions; Debtors' plans and disclosure statements; and adversary proceedings. Those are the primary categories in which Mr. Needler's efforts are being challenged and which give the greatest concern to this Court. In particular, this Court believes that more than half of the time spent in those categories can properly be classified as unnecessary, excessive, or of little or no benefit to the estate. Accordingly, I believe that a 60% reduction in fees for those categories is warranted and, therefore, Mr. Needler's fee application should be reduced by the sum of $40,227.00. Further, at the hearing Mr. Needler acknowledged that his expenses should be reduced by the sum of $293.85.

IT IS, THEREFORE, ORDERED that the final fee application of William L. Needler and Associates, Ltd. (Fil. #274) is approved in the reduced amount of $45,924.50 in fees and $3,200.77 in expenses, for a total of $49,125.27.

DATED:  May 6, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *William L. Needler
    Richard P. Garden
    Jerry L. Jensen
    Rick D. Lange
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.